UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JEFF KITCHEN | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civ. A. No.: 3:17-cv-00040 |
| | § | |
| BASF | § | |
| | § | |
| | § | *TRIAL BY JURY DEMAND* |
|     Defendant. | § | |

---

### DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**

Carolyn Russell
Texas SBN: 24003913
Samantha D. Seaton
Texas SBN: 24088382
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX  77002
713.655.0855 (Phone)
713.655.0020 (Fax)
carolyn.russell@ogletree.com
samantha.seaton@ogletree.com

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

I.     STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ........... 1

II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ...................... 1

      a.  Issues .................................................................................................... 1

      b.  Legal Standards under Fed. R. Civ. P. 12 (c) ...................................... 2

III.   SUMMARY OF THE ARGUMENT ........................................................ 3

IV.    LEGAL ARGUMENT – ADA CLAIM ................................................... 5

      a.  Elements of *a prima facie* ADA disability discrimination claim ........................ 5

      b.  Kitchen has failed to state a claim for relief because he has not sufficiently pleaded that he was disabled under the ADA .................................................... 6

            i.    Plaintiffs must plead specific facts demonstrating that alcoholism rises to the level of a disability.......................................................................... 6

            ii.   Kitchen failed to plead specific facts demonstrating that his alcoholism rose to the level of a disability as defined under the ADA ...................... 7

            iii.  Kitchen instead pleaded specific facts tending to show that his alcoholism was not a disability as defined under the ADA...................... 8

      c.  Kitchen has failed to state a claim for relief because he has not pleaded that he was fired because of his alleged disability............................................................ 9

V.     LEGAL ARGUMENT – ADEA CLAIM ................................................. 11

      a.  Elements of a *prima facie* ADEA age discrimination claim........................... 11

      b.  Kitchen has failed to state a claim for relief under the ADEA ...................... 11

VI.    LEGAL ARGUMENT – SECTION 1981 CLAIM .................................... 14

VII.   LEGAL ARGUMENT – DISMISSAL WITH PREJUDICE .................................. 14

      a.  Legal standard for permitting late amendments to complaints ...................... 15

b.  Permitting amendment would require additional discovery and result in undue delay and prejudice to BASF.................................................. 16

c.  Amendment of the Original Complaint would be futile ................................. 18

V.    CONCLUSION ........................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Adkins v. Excel Mining, LLC*,
   214 F.Supp. 3d 617, 625 (E.D. Ky. Oct. 4, 2016) ...................................................... 10

*Agar Corp., Inc. v. Multi-Fluids Inc.*,
   1998 WL 425474 (S.D. Tex. Apr. 17, 1998) ................................................. 15, 16, 17

*Blazek v. City of Lakewood*,
   576 Fed. Appx. 512 (6th Cir. 2014) ........................................................................... 9

*Bosarge v. Mississippi Bureau of Narcotics*,
   796 F.3d 435 (5th Cir. 2015) ............................................................................... 2, 3

*Brand Coupon Network, LLC v. Catalina Mktg. Corp.*,
   748 F.3d 631 (5th Cir. 2014) .................................................................................. 3

*Burch v. Coca-Cola Co.*,
   119 F.3d 305 (5th Cir. 1997) .................................................................................. 6

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
   394 F.3d 285 (5th Cir. 2004) .................................................................................. 3

*Clark v. Boyd Tunica, Inc.*,
   665 Fed. Appx. 367 (5th Cir. 2016) ..................................................................... 5, 10

*Crummey v. Petrek*,
   2007 WL 2688428 (S.D. Tex. Sept. 10, 2007) ......................................................... 15

*Daves v. Payless Cashways, Inc.*,
   661 F.2d 1022 (5th Cir.1981) ............................................................................... 15

*Delaval v. PTech Drilling Tubulars, LLC*,
   824 F.3d 476 (5th Cir. 2016) .................................................................................. 5

*EEOC v. Exxon Corp.*,
   124 F. Supp. 2d 987 (N.D. Tex. 2000) ..................................................................... 8

*EEOC v. LHC Grp., Inc.*,
   773 F.3d 688 (5th Cir. 2014) .................................................................................. 5

*Evans v. City of Houston*,
   246 F.3d 344 (5th Cir. 2001) ................................................................................ 14

*Fields v. J.C. Penney Co., Inc.*,
  968 F.2d 533 (5th Cir. 1992) ............................................................. 13

*Garza v. City of Donna*,
  2017 WL 2861456 (S.D. Tex. July 5, 2017)............................................ 7, 8

*Gillie v. Louisiana Dept. of State, Civil Service*,
  2013 WL 3329077 (M.D. La. July 1, 2013) .............................................. 13

*Graham Mayberry v. Vought Aircraft Co.*,
  55 F.3d 1086 (5th Cir. 1995) ............................................................. 10

*Graham v. Long Island R.R.*,
  230 F.3d 34 (2d Cir. 2000)................................................................ 10

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) .............................................................. 2

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 168 (2009) ...................................................................... 11

*Guthrie v. Tifco Indus.*,
  941 F.2d 374 (5th Cir. 1991) ............................................................. 13

*Hemingway v. Vessel Star Savannah*,
  200 F.R.D. 572 (E.D. Tex. 2001)......................................................... 16

*Hunter v. Union Pacific R. Co.*,
  2013 WL 3229910 (S.D. Tex. June 25, 2013) ......................................... 9, 10

*Iwanicki v. Bay State Mill. Co.*,
  2012 WL 4442643 (D.N.J. Sept. 21, 2012) .............................................. 13

*Jackson v. Cal-Western Packaging Corp.*,
  602 F.3d 374 (5th Cir. 2010) ............................................................. 11

*Jett v. Dallas Independent School Dist.*,
  798 F.2d 748 (5th Cir. 1986) ............................................................. 14

*Johnson v. Johnson*,
  385 F.3d 503 (5th Cir. 2004) .............................................................. 2

*Lottinger v. Shell Oil Co.*,
  143 F. Supp. 2d 743 (S.D. Tex. 2001) .................................................... 6

*Mararri v. WCI Steel, Inc.*,
130 F.3d 1180 (6th Cir. 1997) ....................................................................... 9

*Marquis v. Omniguide, Inc.*,
714 F. Supp. 2d 640 (N.D. Tex. 2010) ........................................................ 13

*Martin v. Bayland Inc.*,
403 F. Supp. 2d 578 (S.D. Tex. 2005) ......................................................... 13

*Martinets v. Corning Cable Systems, LLC*,
2002 WL 31906341 (N.D. Tex. Dec. 26, 2002) ........................................ 10

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ......................................................................................... 5

*McKey v. Occidental Chem. Corp.*,
956 F. Supp. 1313 (S.D. Tex. 1997) ............................................................. 6

*Montalvo v. City of Houston*,
2010 WL 1945741 (S.D. Tex. May 12, 2010) ............................................ 13

*Mora v. University of Texas Southwestern Medical Center*,
469 Fed. Appx. 295 (5th Cir. Mar. 8, 2012) ......................................... 6, 7

*Morris v. Financial Cas. & Sur., Inc.*,
2008 WL 416931 (S.D. Tex. Feb. 14, 2008) ............................................. 15

*Neely v. PSEG Tex., Ltd. P'ship*,
735 F.3d 242 (5th Cir. 2013) ......................................................................... 7

*Nelson v. Williams Field Servs. Co.*,
216 F.3d 1088, 2000 WL 743684 (10th Cir. June 9, 2000) ..................... 6

*O'Connor v. Consolidated Coin Caterers Corp.*,
517 U.S. 308 (1996) ................................................................................ 10, 11

*Parish v. Frazier*,
195 F.3d 761 (5th Cir. 1999) ....................................................................... 16

*Penalbert-Rosa v. Fortuno-Burset*,
631 F.3d 592 (1st Cir. 2011) ......................................................................... 3

*Schubbe v. Derrick Corp.*,
2015 WL 1003909 (W.D.N.Y. Mar. 5, 2015) ............................................. 9

*Shivangi v. Dean Witter Reynolds, Inc.*,
    825 F.2d 885 (5th Cir. 1987) ...................................................................... 15

*Smith-King v. VF Outlet Store No. 38*,
    2009 WL 224472 (D. South Carolina Jan. 28, 2009) .................................. 13

*Matter of Southmark Corp.*,
    88 F.3d 311 (5th Cir. 1996) .................................................................. 15, 16

*Stinnett v. Delta Air Lines, Inc.*,
    278 F. Supp. 3d 599, 616 (E.D.N.Y. Sept. 30, 2017) .................................... 9

*Sw. Intelecom Inc. v. Compass Bank*,
    253 Fed. Appx. 372 (5th Cir. 2007)............................................................ 16

*Vaughn v. University of Houston*,
    2007 WL 4560540 (S.D. Tex. Dec. 20, 2007)............................................ 15

*Williamson v. American Nat. Ins. Co.*,
    695 F. Supp. 2d 431 (S.D. Tex. 2010) ........................................................ 14

*Zenor v. El Paso Healthcare System, Ltd.*,
    176 F.3d 847 (5th Cir. 1999) ....................................................................... 8

**Statutes**

29 U.S.C. § 623(a)(1) (Age Discrimination in Employment Act (ADEA))1, 2, 4, 10-11, 13

42 U.S.C. § 1981 ("Section 1981") ....................................................................1-2,4, 14

42 U.S.C. § 12112(a) (Americans with Disability Act (ADA))................................1, 3-11

**Other Authorities**

29 C.F.R. § 1630.2(g)(1) ..................................................................................... 6

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant BASF Corporation ("BASF") files this Motion for Judgment on the Pleadings ("Motion") and respectfully requests that this Court grant judgment in favor of BASF on Plaintiff Jeffrey Kitchen's ("Kitchen") claims under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and 42 U.S.C. § 1981 ("Section 1981"), and dismiss such claims with prejudice for the reasons set forth herein.

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Kitchen has brought employment discrimination claims under the ADEA, ADA, and Section 1981.[1] BASF denies all liability and denies any wrongdoing.[2] Discovery is ongoing with a deadline of May 22, 2018.[3] The parties have exchanged written discovery, but no depositions have yet been taken. Kitchen filed a Motion for Summary Judgment on March 21, 2018, seeking summary judgment solely on his ADA disability discrimination claim, and BASF filed its response on April 11, 2018.[4] BASF now files this Motion under Fed. R. Civ. P. 12(c).

## II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### a.  Issues

Has Kitchen pled sufficient facts in his Original Complaint to state a claim for relief for disability discrimination under the ADA?

---

[1] *See* Docket No. 1 at ¶ 6.
[2] *See* Docket No. 4.
[3] *See* Docket No. 11.
[4] *See* Docket Nos. 22 and 25.

Has Kitchen pled sufficient facts in his Original Complaint to state a claim for relief for age discrimination under the ADEA?

Has Kitchen pled sufficient facts in his Original Complaint to state a claim for relief for race and alienage discrimination under Section 1981?

### b. Legal Standard under Fed. R. Civ. P. 12(c).

Fed. R. Civ. P. 12(c) provides that any party may move for judgment on the pleadings after the pleadings are closed. The legal standard for dismissal under Rule 12(c) is the same as the standard for dismissal under Rule 12(b)(6).[5] The central issue is whether, considered in the light most favorable to the plaintiff, the complaint states a valid claim for relief.[6]

To survive a motion to dismiss under this standard, a complaint must plead sufficient facts to support a claim to relief that is plausible on its face.[7] A claim has facial plausibility only when the plaintiff pleads specific facts that, if true, would allow the court to draw the reasonable inference that the defendant is liable to the plaintiff.[8]A pleading that offers mere labels, legal conclusions, or formulaic recitation of the elements of a cause of action is not sufficient.[9] Nor will a complaint suffice if it tenders "naked assertion[s] devoid of further factual enhancement."[10] Although courts interpret specific factual allegations in the light most favorable to plaintiffs, courts do not assume the truth

---

[5] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).
[6] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).
[7] *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[8] *Id.*
[9] *Id.*
[10] *Id.*

of "conclusory" legal assertions in the complaint, or allegations that are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual."[11]

When considering a motion under Rule 12(c), courts are generally limited to "the contents of the pleadings, including attachments thereto," where "pleadings" means "the complaint, answer to the complaint, and 'if the court orders one, a reply to an answer.'"[12] Courts may also consider documents attached to the defendant's motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."[13]

### III.   SUMMARY OF THE ARGUMENT

Kitchen has failed to state any facially plausible claim for relief in his Original Complaint, and his claims should therefore be dismissed under Fed. R. Civ. P. 12(c).

With respect to his ADA claim, Kitchen has failed to plead any facts demonstrating that his alcoholism rose to the level of a disability at the time of his termination, and in fact has pleaded specific facts tending to show that he was <u>not</u> disabled within the meaning of the ADA. Kitchen also pleaded specifically that he was fired because of "faulty" alcohol test results due to an allegedly malfunctioning machine. Case law is clear that alcohol test results are a legitimate, nondiscriminatory reason for termination. This is true even if the employee has problems with alcohol abuse, even if the employer in good faith misinterpreted the test results, and even if the test results themselves are later found to be inaccurate. Kitchen did not plead in his Original Complaint that he was fired because of his disability or any discriminatory animus

---

[11] *Id.* at 442 (citing *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011)).
[12] *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014); Fed. R. Civ. P. 7(a).
[13] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

against disabled persons, and he therefore has not stated a claim for relief under the ADA.

With respect to his ADEA claim, Kitchen did not plead any facts demonstrating that he was discharged because of his age, that he was replaced by a younger individual, that he was treated differently than a similarly situated younger individual, or even that anyone at BASF harbored any animus against him because of his age. Kitchen therefore has not stated a claim for relief under the ADEA.

With respect to his Section 1981 claim, Kitchen did not even identify his race or alienage in his Original Complaint and did not plead any facts suggesting that BASF discriminated against him on those bases. Section 1981 only prohibits discrimination on the basis of race or alienage, and Kitchen has therefore not stated a claim for relief under Section 1981.

It is now approximately nine months since the deadline to amend pleadings expired, approximately 13 months since Kitchen first filed his Original Complaint, and approximately two-and-a-half years since Kitchen's employment ended. The discovery period is almost complete, and Kitchen has already filed a dispositive motion. There is no reason Kitchen could not have amended his Original Complaint months ago, and permitting him to do so now would result in the need for additional discovery, further delay, and prejudice to BASF. Further, amendment would be futile since, to state a valid claim for relief under the statutes cited by Kitchen, he would be required to plead new facts inconsistent with his prior allegations. BASF therefore respectfully requests that this Court dismiss Kitchen's claims with prejudice without granting him leave to amend.

4

## IV.    LEGAL ARGUMENT – ADA CLAIM

### a.  Elements of a *prima facie* ADA disability discrimination claim.

The ADA prohibits employers from discriminating "on the basis of disability."[14] Absent direct evidence of discrimination, a discriminatory termination case under the ADA must be established using the familiar burden-shifting framework articulated in *McDonnel Douglas Corp. v. Green*.[15] First, an employee must establish a *prima facie* case of discrimination by showing: (1) he had a disability, as that term is defined under the statute; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of the disability.[16] If the employee meets this burden, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action.[17] Once the employer has provided such a reason, the plaintiff must show that the employer's reason is mere pretext for unlawful discrimination on the basis of disability.[18] To establish pretext, an employee must provide actual evidence of disparate treatment based on his disability compared to non-disabled comparators, or prove that the employer's proffered explanation is false.[19] An employee's subjective belief that he has suffered discrimination is not sufficient to prove pretext.[20]

---

[14] 42 U.S.C. § 12112(a).
[15] *Clark v. Boyd Tunica, Inc.*, 665 Fed. Appx. 367, 370 (5th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).
[16] *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).
[17] *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 479 (5th Cir. 2016).
[18] *Id.*
[19] *Id.* at 480.
[20] *Id.*

**b. Kitchen has failed to state a claim for relief because he has not sufficiently pleaded that he was disabled under the ADA.**

    **i. Plaintiffs must plead facts showing that their alcoholism rises to the level of a disability.**

Alcoholism is not a *per se* disability under the ADA.[21] This means that, to qualify as disabled under the statute, an alcoholic employee must plead specific facts sufficient to show that his alcoholism rises to the level of a "disability" as that term is defined under the ADA and its accompanying regulations.[22] Whether a particular employee's alcoholism constitutes a disability under the ADA is a factual issue that must be evaluated on a case-by-case basis.[23]

The ADA regulations define a "disability" as: "(i) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) A record of such an impairment; or (iii) Being regarded as having such an impairment" which means "that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'"[24]

---

[21] *See, e.g., Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997) (declining to adopt the "questionable position" that alcoholism is a *per se* disability); *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 761 (S.D. Tex. 2001) ("The Fifth Circuit and other courts have declined to find alcoholism to be a *per se* disability under the ADA."); *McKey v. Occidental Chem. Corp.*, 956 F. Supp. 1313, 1317 (S.D. Tex. 1997) ("Nowhere in the ADA, however, does it state that an alcoholic is disabled *per se*."); *see also Mora v. University of Texas Southwestern Medical Center*, 469 Fed. Appx. 295, 297 (5th Cir. Mar. 8, 2012) (affirming lower court's grant of employer's motion to dismiss where plaintiff employee failed to plead in her complaint specific facts demonstrating how her alcoholism substantially limited any major life activities, as required under the ADA).

[22] *Id.*

[23] *Lottinger*, 143 F. Supp. 2d at 761 (citing *Nelson v. Williams Field Servs. Co.*, 216 F.3d 1088, 2000 WL 743684 at *4 (10th Cir. June 9, 2000)).

[24] 29 C.F.R. § 1630.2(g)(1).

Mere formulaic recitation of the "disability" element in a complaint, without specific supporting facts, is not sufficient to plead an ADA discrimination cause of action.[25] Courts have further confirmed that the 2008 amendments to the ADA do not absolve a plaintiff from his burden of proving the existence of a disability.[26] Thus, in *Mora*, decided in 2012, the Fifth Circuit Court of Appeals affirmed the dismissal of an ADA lawsuit where the plaintiff failed to plead facts sufficient to "specify which of her 'life activities' [was] substantially limited" by her alcoholism—a failure that the Court of Appeals found "fatal to stating a valid claim for relief" under the ADA.[27]

### ii. Kitchen failed to plead facts demonstrating that his alcoholism rose to the level of a disability as defined under the ADA.

The only paragraphs in Kitchen's entire Original Complaint that even tangentially describe his alleged alcoholism prior to his termination are as follows:

- In paragraph 10, Kitchen pleads that he received unspecified treatment for alcoholism on three occasions during the last four years of his employment, including once in 2010, once beginning in 2013, and a third time in 2014.[28]

- In paragraph 21, Kitchen pleads that "even if he had been under the influence of alcohol, his condition is a disabling condition under the Americans with Disabilities Act…"[29]

There is nothing else. These two paragraphs are not sufficient to establish that Kitchen's alcoholism constituted a disability within the meaning of the ADA at the time his

---

[25] *Mora*, 469 Fed. Appx. at 297.
[26] *Garza v. City of Donna*, 2017 WL 2861456 at *6 (S.D. Tex. July 5, 2017) (citing *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013).
[27] *Mora*, 469 Fed. Appx. at 297.
[28] *See* Docket No. 1 at ¶ 10.
[29] *Id.* at ¶ 21.

employment ended in October 2015.[30] Paragraph 10 does not include any facts indicating that the alleged alcoholism caused any "substantial limitation" of Kitchen's "major life activities"; that Kitchen had a record of such impairment; or that BASF actually regarded him as having such impairment.[31] Even interpreting that paragraph in the light most favorable to Kitchen, such threadbare assertions of prior treatment for alcoholism are not sufficient on their face to establish the disability element of a *prima facie* ADA discrimination case.[32] Paragraph 21 is a legal conclusion not entitled to any presumption of truth under Fed. R. Civ. P. 12(c).

### iii. Kitchen instead pleaded specific facts tending to show that his alcoholism was not a disability as defined under the ADA.

Far from pleading facts demonstrating a disability, Kitchen instead pleads facts tending to show he was <u>not</u> disabled at the time of his termination in October 2015. He pleads in paragraph 26 of his Original Complaint that he had been sober for a full 20 months prior to his termination of employment.[33] He then admits in paragraph 28 that it was only <u>after</u> his termination that he "suffered a setback and began drinking again."[34] The Original Complaint offers no explanation of how Kitchen could have suffered a

---

[30] *Id.* at ¶ 15 (admitting that Kitchen's employment ended in October 2015, approximately a year after the last of the treatments referred to in paragraph 10).

[31] *Id.* at ¶ 10.

[32] *See, e.g., Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 860 (5th Cir. 1999) (explaining that even prior hospitalization for alcoholism does not necessarily mean that the employee's alcoholism rises to the level of a disability absent evidence that the alcoholism substantially limited a major life activity); *EEOC v. Exxon Corp.*, 124 F. Supp. 2d 987, 997 (N.D. Tex. 2000) (explaining that isolated incidents of hospitalization, inpatient counseling, or a mere medical diagnosis will not alone establish a substantially limiting impairment under the ADA); *Garza v. City of Donna*, 2017 WL 2861456 (S.D. Tex. July 5, 2017) (holding that plaintiff failed to plead his alcoholism was a disability based solely on allegations that his condition increased his risk of suicide, led to arrests and emergency room visits, and limited him to working only irregular low-paying jobs).

[33] *Id.* at ¶

[34] *Id.*

substantial limitation of major life activities due to alcohol abuse while simultaneously achieving nearly two years of sobriety. Nor does the Original Complaint include any factual assertion explaining why BASF suddenly would have regarded Kitchen as being disabled from alcoholism in October 2015, after Kitchen claims to have spent at least 20 consecutive months without touching alcohol.[35]

### c. Kitchen has failed to state a claim for relief because he has not pleaded that he was fired because of his alleged disability.

Kitchen does not plead anywhere in his Original Complaint that he was fired because he was a disabled alcoholic or because anyone at BASF harbored a discriminatory animus against disabled persons. Instead, he admits that he was fired because of his alcohol test results. Specifically, in paragraphs 14 and 15 Kitchen states:

> "14. Plaintiff was wrongfully terminated <u>on the basis of a faulty reading from a malfunctioning machine</u>. Plaintiff questioned the reliability of the machine and questioned the reliability of the test which resulted in his termination due to said technical difficulties.
>
> 15. As a result, Plaintiff was sent home on or about September 28, 2015. Plaintiff was terminated on or about October 1, 2015." (emphasis added).

It is not unlawful under the ADA for an employer to terminate a non-DOT at-will employee because of an alcohol or drug test result.[36] This is true: (1) even if the employee

---

[35] *See Schubbe v. Derrick Corp.*, 2015 WL 1003909 at *6 (W.D.N.Y. Mar. 5, 2015) (granting motion to dismiss plaintiff's ADA discrimination claim and noting that plaintiff had not pleaded any plausible reason for his employer to have suddenly regarded his alcoholism as disabling after years of prior employment).

[36] *See, e.g. Blazek v. City of Lakewood*, 576 Fed. Appx. 512, 516 (6th Cir. 2014) (holding that the violation of a company drug or alcohol policy is a legitimate, nondiscriminatory reason for firing an employee)*;Hunter v. Union Pacific R. Co.*, 2013 WL 3229910 at *7 (S.D. Tex. June 25, 2013) (explaining "well settled" law that a positive drug test result is a non-discriminatory business reason for an adverse employment action); *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 616 (E.D.N.Y. Sept. 30, 2017) (dismissing ADA retaliation claim where plaintiff admitted in her complaint that she was terminated for failing a drug and alcohol test).

has had prior problems with substance abuse,[37] (2) even if the employer in good faith misinterpreted or misunderstood the test results,[38] and (3) even if the test results are later revealed to have been incorrect or the test improperly administered under the employer's policies.[39] This is because the ADA prohibits only adverse employment actions actually motivated by unlawful discriminatory animus against disabled persons; employers are not liable under the ADA merely because a personnel decision may have been incorrect, unfair, or faulty.[40] Kitchen does not plead any specific facts in his Original Complaint showing that anyone at BASF harbored any discriminatory animus towards disabled persons, or even showing that he was treated differently than similarly situated  non-

---

[37] *See, e.g., Mararri v. WCI Steel, Inc.*, 130 F.3d 1180, 1182-83 (6th Cir. 1997) (explaining that ADA does not prohibit employers from terminating even alcoholic employees for violation of return to work agreement).

[38] *See, e.g., Clark v. Boyd Tunica, Inc.*, 665 Fed. Apx. 367 (5th Cir. 2016) (holding that, because employer reasonably believed test result showed employee had consumed alcohol, employee could not establish pretext); *Graham Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (explaining that the question is not whether the employer made an erroneous decision, but whether the decision was made with discriminatory motive); *Hunter*, 2013 WL 3229910 at *8 (finding no evidence of unlawful pretext where employer reasonably believed employee's drug test results were caused by cocaine consumption, despite employee's alternative explanation of test results); *Adkins v. Excel Mining, LLC*, 214 F.Supp. 3d 617, 625 (E.D. Ky. Oct. 4, 2016) (holding no unlawful pretext under ADA where employer "honestly believed" employee violated company drug policy, "regardless of whether he actually did").

[38] *See, e.g., Martinets v. Corning Cable Systems, LLC*, 2002 WL 31906341 at *3 (N.D. Tex. Dec. 26, 2002) (explaining that even if test results were in error, as plaintiff alleged, this would not be sufficient to prove  disability discrimination under the ADA); *Graham v. Long Island R.R.*, 230 F.3d 34, 44 (2d Cir. 2000) (explaining that "[e]ven assuming a jury were later to find that the laboratory's drug test was either improperly administered or inaccurate," this would not establish that the employer acted with unlawful discriminatory motive).

[38] *See* footnotes 34-36 *supra*.

[38] *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996); 29 U.S.C. § 623(a)(1).evidence of unlawful pretext under ADA where employer "honestly believed" employee violated company drug policy, "regardless of whether he actually did").

[39] *See, e.g., Martinets v. Corning Cable Systems, LLC*, 2002 WL 31906341 at *3 (N.D. Tex. Dec. 26, 2002) (explaining that even if test results were in error, as plaintiff alleged, this would not be sufficient to prove  disability discrimination under the ADA); *Graham v. Long Island R.R.*, 230 F.3d 34, 44 (2d Cir. 2000) (explaining that "[e]ven assuming a jury were later to find that the laboratory's drug test was either improperly administered or inaccurate," this would not establish that the employer acted with unlawful discriminatory motive).

[40] *See* footnotes 34-36 *supra*.

disabled employees. Because Kitchen pleads only that he was fired because of "a faulty reading from a malfunctioning machine" and not because of any discriminatory reason, he has failed to state a claim for relief under the ADA.

## V.    LEGAL ARGUMENT – ADEA CLAIM

### a.  Elements of a *prima facie* ADEA age discrimination claim.

The ADEA prohibits employers from discriminating against employees who are at least 40 years old on the basis of age.[41] Absent direct evidence of age discrimination, a plaintiff employee must prove the following to establish a *prima facie* under the ADEA: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.[42] If the employer then provides a legitimate, non-discriminatory reason for the employee's termination, the employee must prove that the reason was mere pretext for unlawful discrimination.[43] Pretext must be shown either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.[44] The plaintiff employee bears the burden of persuasion and must prove that his age was the "but-for" cause of his discharge.[45]

### b.  Kitchen has failed to state a claim for relief under the ADEA.

Only two paragraphs in Kitchen's Original Complaint reference Kitchen's age:

---

[41] *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996); 29 U.S.C. § 623(a)(1).
[42] *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (citations omitted).
[43] *Id.*
[44] *Id.*
[45] *Id.* at 377 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 168 (2009)).

- Paragraph 22 states: "Plaintiff further contends that he is over the age of 55 years and believes that he was further discriminated against on the basis of age."[46]

- Paragraph 24 states: "Plaintiff expects a continued loss of wages at the rate of $281.85 per day, not including pay increases and overtime. Plaintiff has been unable to locate suitable employment due to his termination and/or his age. Plaintiff expected to be employed until retirement age of 65 or longer. Therefore, Plaintiff contends that as a result of his termination, he has lost future earning [sic] in the approximate amount of $925,425.00.00."[47]

There is nothing else. Kitchen does not plead that he was replaced by someone outside the protected class. He does not plead that he was replaced by someone younger. He does not plead any facts showing that he was discharged because of his age. He does not even identify anyone at BASF who allegedly had a problem with his age. Paragraph 22 is merely a legal conclusion that is not entitled to any presumption of truth under Fed. R. Civ. P. 12(c), and Paragraph 24 does not contain any factual allegations whatsoever connecting Kitchen's age to his discharge or to any other adverse employment action.

Kitchen refers to his age in Exhibit 1 to his Original Complaint only as follows: "I am over 55 years old and have heard that these plants start firing or retiring their employees around this age."[48] Even liberally interpreted, this "factual" allegation is (1) an unsubstantiated rumor (2) from an unidentified third-party speaker (3) concerning unspecified actions (4) taken by unidentified persons (5) at unidentified plants (6) against unidentified third-party individuals (7) at some unspecified date and time (8) that somehow resulted in either the "firing or retiring" of such third-party individuals (9) who

---

[46] Docket No. 1 at ¶ 22.
[47] Id. at ¶ 24.
[48] Docket No. 1 at Exhibit 1.

were "around this age." Such vague allegations of age discrimination do not state a plausible claim for relief under the ADEA.[49] Even if Kitchen had pleaded specific facts showing that BASF had laid off or fired other older employees (and BASF denies that he has done so), this would not be sufficient to show that Kitchen or any of the other employees was terminated for discriminatory reasons.[50] Case law is clear that "[u]nfounded speculation about the reasons for the departure of other employees does not provide evidence of age discrimination against [the plaintiff]."[51] In any event, as discussed above, Kitchen has already pleaded that he was fired because of a legitimate nondiscriminatory reason: "on the basis of a faulty reading from a malfunctioning machine."[52]

The Original Complaint does not, on its face, state a plausible claim for relief under the ADEA. The claim should therefore be dismissed.

---

[49] *See, e.g., Guthrie v. Tifco Indus.*, 941 F.2d 374, 378-79 (5th Cir. 1991) (explaining that "vague" remarks made by an individual not involved in the plaintiff's demotion were "insufficient to establish discrimination" under the ADEA); *see also Marquis v. Omniguide, Inc.*, 714 F. Supp. 2d 640, 647 (N.D. Tex. 2010) (dismissing overly vague ADEA retaliation claim); *Montalvo v. City of Houston*, Civ. A. 4:08-CV-2674, 2010 WL 1945741 at *10 (S.D. Tex. May 12, 2010) (granting summary judgment for employer on plaintiff's "vague and unsupported" age discrimination allegations); *Gillie v. Louisiana Dept. of State, Civil Service*, 2013 WL 3329077 at *3 and n. 1 (M.D. La. July 1, 2013) (dismissing vague race, color, sex, and age discrimination claims); *Iwanicki v. Bay State Mill. Co.*, CIV.A. 11-1792 CCC, 2012 WL 4442643 at *4 (D.N.J. Sept. 21, 2012) (dismissing "vague and conclusory" age discrimination claims); *Smith-King v. VF Outlet Store No. 38*, 2009 WL 224472 at *3 (D. South Carolina Jan. 28, 2009) (dismissing claims consisting only of "vague references" to age discrimination).
[50] *Martin v. Bayland Inc.*, 403 F. Supp. 2d 578, 584 (S.D. Tex. 2005) (holding that evidence that other older employees were fired, laid off, or reduced to part-time work was not sufficient to demonstrate age discrimination).
[51] *Id.* (citing *Fields v. J.C. Penney Co., Inc.*, 968 F.2d 533, 537-38 (5th Cir. 1992)).
[52] Docket No. 1 at ¶¶ 14-15.

13

## VI.    LEGAL ARGUMENT – SECTION 1981 CLAIM

Kitchen cites Section 1981 in paragraph 6 of his Original Complaint.[53] Section 1981 <u>only</u> provides a cause of action for public or private discrimination "based on race or alienage."[54] The statute does not provide any cause of action to remedy discrimination based on age or disability.[55] Kitchen does not even identify his race or alienage in his Original Complaint, let alone plead any facts indicating that BASF discriminated against him on those grounds. Because race and alienage are the only grounds for a cause of action under Section 1981, and because the Original Complaint never even refers to those protected characteristics, the Original Complaint fails to state a plausible claim for relief under Section 1981. The claim should be dismissed.

## VII.    LEGAL ARGUMENT – DISMISSAL WITH PREJUDICE

For the reasons discussed below, BASF respectfully requests that this Court dismiss Kitchen's claims with prejudice rather than permitting Kitchen to amend his Original Complaint at this late stage of litigation.

---

[53] BASF is uncertain whether Kitchen actually intended to cite Section 1981 in his Original Complaint, since he has not referred to the statute again in subsequent filings in this litigation. BASF will assume for purposes of this Motion that Kitchen intended to assert a Section 1981 claim.

[54] *Jett v. Dallas Independent School Dist.*, 798 F.2d 748, 762 (5th Cir. 1986).

[55] *See Evans v. City of Houston*, 246 F.3d 344 at n. 9 (5th Cir. 2001) (noting that the district court's analysis of an age discrimination claim under Section 1981 was improper, since Section 1981 "prohibits only racial discrimination"); *Williamson v. American Nat. Ins. Co.*, 695 F. Supp. 2d 431, 442 (S.D. Tex. 2010) (holding that plaintiff could not bring his disability discrimination claim under Section 1981 "as a matter of law").

14

### a. Legal standard for permitting late amendments to complaints.

After the expiration of a deadline to amend pleadings in a Docket Control Order, a plaintiff must seek leave from the Court and show good cause to amend his complaint.[56] Leave to amend is "by no means automatic"[57] even within the time for amendment set out under the scheduling order, and a party's request to amend must be "tempered by the necessary power of a district court to manage a case."[58] As the Fifth Circuit Court of Appeals explained, "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time."[59] At some point in the course of litigation, a delay preceding a motion to amend goes beyond excusable neglect, "even when there is no evidence of bad faith or dilatory motive."[60]

A trial court considering whether to deny leave to amend may thus properly consider factors such as any unexplained delay following an original complaint and whether the facts underlying the amendment were already known when the original complaint was filed.[61] Other relevant factors that may be considered include whether there was any bad faith or dilatory motive on the part of the movant, whether the movant

---

[56] *See, e.g., Vaughn v. University of Houston*, No. H-05-2539, 2007 WL 4560540 at *1 (S.D. Tex. Dec. 20, 2007) (denying motion for leave to amend filed after deadline where plaintiff failed to show good cause for the delay); *see also* Fed. R. Civ. P. 16(b) (governing amendment of pleadings once a scheduling order has been issued by the district court).

[57] *Agar Corp., Inc. v. Multi-Fluids Inc.*, No. H-95-5105, 1998 WL 425474 at *1 (S.D. Tex. Apr. 17, 1998) (citations omitted); *see also Morris v. Financial Cas. & Sur., Inc.*, No. H-07-1396, 2008 WL 416931 at *1 (S.D. Tex. Feb. 14, 2008) (denying leave to amend even within the deadline set by scheduling order where amendment would be futile); *Crummey v. Petrek*, No. H-07-1685, 2007 WL 2688428 at *1 (S.D. Tex. Sept. 10, 2007) (denying motion for leave to amend filed even before expiration of the deadline in the scheduling order).

[58] *Id.* (citing *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987)).

[59] *Matter of Southmark Corp.*, 88 F.3d 311, 315 (5th Cir. 1996) (*citing Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir.1981)).

[60] *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022 (5th Cir. 1981).

[61] *Id.* (citations omitted).

repeatedly failed to cure deficiencies, whether additional discovery will be needed, whether undue prejudice would result to the opposing party, and whether the amendment would be futile.[62]

Courts frequently deny leave to amend sought more than a year after the original complaint was filed. In *Matter of Southmark*, for example, the Fifth Circuit Court of Appeals affirmed the denial of a motion for leave to amend that was filed 13 months after the original complaint and approximately three (3) years after the events underlying the litigation.[63] Courts also frequently deny leave to amend near the end of the discovery period, several months after the expiration of the deadline to amend pleadings, and/or after submission of dispositive motions.[64]

### b. Permitting amendment would require additional discovery and result in undue delay and prejudice to BASF.

Kitchen filed his Original Complaint 14 months ago on February 3, 2017.[65] This Court issued a Docket Control Order on June 1, 2017 setting the deadline to amend

---

[62] *Agar Corp., Inc.*, 1998 WL 425474 at *1 (citations omitted).

[63] *Id.; see also Hemingway v. Vessel Star Savannah*, 200 F.R.D. 572 (E.D. Tex. 2001) (denying motion for leave to amend filed sixteen months after original complaint).

[64] *See, e.g., Sw. Intelecom Inc. v. Compass Bank*, 253 Fed. Appx. 372, 375-76 (5th Cir. 2007) (affirming denial of leave to amend when plaintiff filed its motion for leave several months after deadline for amending pleadings had expired); *Parish v. Frazier*, 195 F.3d 761, 763-64 (5th Cir. 1999) (affirming denial of plaintiff's motion for leave to amend when a dispositive motion had already been filed and additional discovery would be necessary if amendment were allowed); *Agar Corp., Inc.*, 1998 WL 425474 (denying leave to amend when discovery period was set to expire in two weeks).

[65] Docket No. 1. BASF further notes that the Original Complaint was filed more than a year after Kitchen's termination of employment in early October 2015. This means that any amended complaint filed now would be separated from the original complaint by approximately 14 months and would be separated from the actual events underlying this litigation by approximately 2.5 years, or roughly 30 months.

pleadings for July 13, 2017.[66] Kitchen failed to file any amended complaint before that deadline.

Over the next nine (9) months after July 2017, the parties exchanged discovery including initial disclosures, requests for production, and interrogatories. Kitchen also filed a dispositive Motion for Summary Judgment on his disability discrimination claim, to which BASF responded and which is currently pending before this Court.[67] At no point during these nine (9) months did Kitchen ever file any motion for leave to amend his Original Complaint.

Discovery is now nearing an end, with an upcoming deadline of May 22, 2018.[68] Written discovery effectively has already ended, pursuant to this Court's admonition in the Docket Control Order that "[w]ritten discovery requests are not timely if they are filed so close to this deadline that the recipient would not be required under the Federal Rules of Civil Procedure to respond until after the deadline."[69]

If Kitchen is permitted to amend his Original Complaint at this late stage so near to the end of discovery and after already filing a dispositive motion, undue delay and prejudice will result. BASF will need to expend additional time and resources drafting a new answer and affirmative defenses, filing another motion to dismiss, and conducting entirely new discovery related to any new factual allegations not previously included in the Original Complaint filed more than a year ago. Further, and to the extent Kitchen now attempts to amend his disability discrimination claim, the parties' prior briefing on

---

[66] Docket No. 11.
[67] Docket Nos. 22 and 25.
[68] Docket No. 11.
[69] *Id.*

Kitchen's Motion for Summary Judgment will be rendered unnecessary and a wasted expense. If amendment is permitted, BASF believes it will be forced to seek an extended continuance given the late stage of the litigation. Respectfully, Kitchen's unexplained failure to amend his complaint by the July 2017 deadline set in this Court's Docket Control Order (or at any time in the 9 months thereafter) is not good cause to further delay this single plaintiff discrimination case.

### c.  Amendment of the Original Complaint would be futile.

Amendment of Kitchen's disability discrimination claim would be futile because Kitchen has already affirmatively pleaded in his Original Complaint facts tending to show that he was not disabled at the time of his termination. Further, amendment of all of Kitchen's discrimination claims would be futile because he has admitted already that he was fired "on the basis of a faulty reading from a malfunctioning machine"—a legitimate nondiscriminatory reason for termination of employment under Fifth Circuit and other case law. In order to state a plausible claim for relief under any of the statutes cited in his Original Complaint, Kitchen would now need to plead factual assertions inconsistent with his prior allegations in the Original Complaint—namely, that he was fired not because of faulty test results as he previously alleged, but because of some discriminatory animus against him based on his age, disability, or race.

## VIII.  CONCLUSION

For all the foregoing reasons, BASF respectfully requests that Kitchen's claims be dismissed with prejudice.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.**

*/s/  Carolyn Russell*
Carolyn Russell
Texas SBN: 24003913
One Allen Center
500 Dallas Street, Suite 3000
Houston, TX  77002
713.655.0855
713.655.0020 (Fax)
carolyn.russell@ogletree.com

**ATTORNEY FOR DEFENDANT**

**OF COUNSEL:**

Samantha D. Seaton
Texas SBN: 24088382
Stephen J. Quezada
Texas SBN: 24076195
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
One Allen Center
500 Dallas St., Ste. 300
Houston, Texas 77002
713.655.0855 (Phone)
713.655.0020 (Fax)
samantha.seaton@ogletreedeakins.com
stephen.quezada@ogletreedeakins.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 17 day of April, 2018, the foregoing document was served on Plaintiff in accordance with the Federal Rules of Civil Procedure:

Veronica Davis
226 N. Mattson
West Columbia, Texas 77486

ATTORNEY FOR PLAINTIFF

*/s/ Carolyn Russell*
Carolyn Russell