UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JEFF KITCHEN | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17–CV–00040 |
| | § | |
| BASF | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Jeff Kitchen ("Kitchen") brings this employment discrimination case alleging that BASF Corporation ("BASF") discriminated against him based on a disability in violation of the American with Disabilities Act ("ADA"), discriminated against him based on his age in violation of the Age Discrimination in Employment ("ADEA"), and violated 42 U.S.C. § 1981 ("Section 1981"). BASF has filed a Motion for Judgment on the Pleadings (Dkt. 31) and a Motion for Summary Judgment (Dkt. 77). Kitchen has also moved for summary judgment. Dkt. 71.

All dispositive pretrial motions in this case have been referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 112. Having considered the parties' briefing, the applicable legal authorities, oral argument, and the summary judgment record, the Court RECOMMENDS that BASF Defendant's Motion for Summary Judgment (Dkt. 77) be GRANTED; Plaintiff's Second Motion for Summary

Judgment (Dkt. 71) be DENIED; and BASF's Motion for Judgment on the Pleadings (Dkt. 31) be DENIED AS MOOT.  The Court's reasoning is explained in detail below.

## BACKGROUND

Kitchen began working for BASF, a producer and marketer of chemicals and related products, in 2006 at a chemical plant in Seaford, Delaware.  In the fall of 2010, Kitchen was involved in a drunk driving accident in which he injured two people while driving with an alcohol level of approximately 0.13.  Instead of immediately terminating Kitchen's employment, BASF permitted him to take a 30-day leave of absence to undergo inpatient alcohol abuse treatment.  Kitchen rejoined BASF after completing the treatment.

When BASF closed the Seaford, Delaware plant in 2013, BASF offered Kitchen the opportunity to transfer to its Freeport, Texas facility.  Around October 2013, before Kitchen relocated to Texas, BASF allowed Kitchen to take another leave of absence for alcohol abuse treatment.  After participating in this two-month treatment program, Kitchen moved halfway across the country and, in February 2014, started his new position at BASF's Freeport, Texas location.

In April 2014, a co-worker reported to management that Kitchen's breath smelled like alcohol.  Kitchen admitted that it was certainly plausible since he probably had four drinks that day **after** he arrived at the plant for work.  Instead of terminating him this time around, BASF told Kitchen they wanted to get him help, and arranged for him to take approximately five months off work to seek outpatient treatment.

Unfortunately, the alcohol treatment did not resolve Kitchen's problems with alcohol.  In May 2014, police pulled Kitchen over for driving erratically, and charged him

2

with driving under the influence after a breathalyzer test indicated that he was driving with an alcohol level of 0.15. Kitchen pled guilty and spent 19 days in jail. While incarcerated, Kitchen wrote BASF a letter requesting that he be allowed to keep his job: "Whatever your decision is just know I appr[e]ciate the opportunity you gave me, the kindness and support you have shown and making me feel at home with BASF." Dkt. 77-3 at 32. Somewhat incredibly, BASF did not terminate Kitchen. Instead, the company again accommodated him, requiring him to complete an Employee Assistance Program at an outpatient facility.

Kitchen returned to work at BASF in October 2014. As a condition of his return to work, Kitchen agreed:

- He would remain sober at work;
- He would continue treatment for alcohol abuse;
- He would undergo follow-up testing at work; and
- He would conduct himself professionally and appropriately.

Before Kitchen rejoined BASF, the company issued a Final Warning and Return to Work, notifying Kitchen that any subsequent violations of the above conditions would result in immediate termination.

On September 28, 2015, Kitchen was scheduled for an alcohol test. He arrived for work at 7:30 a.m. that day, two hours late. The test was not administered until 10:40 a.m., and the results showed an alcohol level of 0.014. A second test was administered approximately 15 minutes later, showing an alcohol level of 0.010.

Kitchen's supervisor, Mark Damron ("Damron"), reviewed these results and conferred with BASF's in-house physician regarding the rate alcohol is metabolized in the body over time. Based on the company doctor's calculations, Damron's understanding

was that, assuming Kitchen had not been drinking at work and that alcohol levels in his body had decreased normally over time, Kitchen must have been under the influence of alcohol when he arrived at work at 7:30 a.m. Because Damron believed Kitchen had turned up at work under the influence of alcohol in violation of company policy and his Return to Work Agreement and Final Warning, Kitchen's employment was terminated effective October 2, 2015. At the time of his termination, Kitchen was over the age of 55.

Kitchen contends that the alcohol testing process conducted by BASF was replete with problems in the administration of the test and interpretation of the test results. These alleged problems included a lack of proper certification by the individual who administered the alcohol test, the use of a defective machine, false test results, and a failure to properly calibrate the testing machine.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact does not exist unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017). Once

4

a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (citations and quotation marks omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).

## DISCUSSION

In his Second Motion for Summary Judgment,[1] Kitchen contends that he is entitled to summary judgment on his ADA claim. In a nutshell, Kitchen asserts that he can establish a prima facie case of ADA discrimination, and BASF cannot rebut the presumption because the company's proffered reason for terminating his employment is a mere pretext, with the

---

[1] In his first Motion for Summary Judgment, Kitchen also sought summary judgment on his ADA claim. Kitchen contended that:

> [He] was neither impaired nor did he test positive for alcohol at the time of testing which was the basis for his termination. [He] neither violated BASF policy, the Department of Transportation standards and regulation, nor the Texas Penal Code with respect to the standard for impairment or intoxication. Therefore, the reasons for termination were pretextual and were discriminatory on the basis of a disability recognized by the [ADA].

Dkt. 22 at 10–11 (emphasis omitted). The Court denied the motion, explaining that Kitchen "failed to show there is no genuine dispute as to any material fact." Dkt. 60.

5

real reason for his termination having been based on impermissible animus. Meanwhile, BASF has filed its own Motion for Summary Judgment, arguing that Kitchen cannot establish a prima facie case of disability discrimination under the ADA and cannot show that BASF's legitimate reason for his termination is a mere pretext for a discriminatory animus against disabled persons. BASF also argues that Kitchen's age discrimination claim under the ADEA and his Section 1981 claim fail as matter of law.

Plaintiff's Opposition/Response to Defendant's Motion for Summary Judgment ("Summary Judgment Response") contains 24-pages of argument but has no summary judgment evidence attached.[2] This is a problem for Kitchen because it is well-established in the Fifth Circuit that unsworn pleadings do not constitute summary judgment evidence. *See Johnson v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.") (citation omitted). Although Kitchen failed to introduce competent summary judgment evidence in response to BASF's Motion for Summary Judgment, this Court is not permitted to automatically enter a summary judgment against him. As the movant, BASF must still show there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *See Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 362 n.3 (5th Cir. 1995). If BASF fails to meet its initial burden, the Court must deny the motion for

---

[2] Kitchen filed the Summary Judgment Response at 11:59 p.m. on July 26, 2018, the same date a response to BASF's Motion for Summary Judgment was due. The Summary Judgment Response had no evidence attached to it. Kitchen late-filed a Corrected Opposition/Response to Defendant's Motion for Summary Judgment (with summary judgment evidence attached) at 10:27 p.m. on July 27, 2018. The Court struck the "corrected" response as untimely under the local rules. Dkt. 95.

6

summary judgment even if the nonmovant fails present any evidence or file a response. *See Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

For convenience sake, the Court will address both parties' summary judgment motions at the same time. To be clear, although Kitchen failed to timely submit summary judgment evidence in conjunction with his response to BASF's Motion for Summary Judgment, he did submit evidence in conjunction with his own Second Motion for Summary Judgment. The Court considers this evidence for the purpose of assessing both pending motions for summary judgment.

**A.     The ADA Claim**

**1.     Elements of an ADA Disability Discrimination Claim**

The ADA is a "broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (internal quotation marks omitted)). The specific language of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by, among other things, terminating an individual's employment. 42 U.S.C. § 12112(a).

When analyzing an ADA claim, the Court must utilize the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must first establish a prima facie case of disability discrimination by showing that (1) he is disabled, has a record of having a disability, or is regarded as disabled; (2) he is qualified for his job; and (3) he was subjected to an adverse employment

7

action on account of his disability. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015); *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999).

Once a plaintiff establishes a prima facie case, "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant's burden is low—it is merely one of production not persuasion. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257–58 (1981). "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

If an employer articulates a legitimate nondiscriminatory reason for its action, the presumption of discrimination disappears, and "[t]he burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Mayberry*, 55 F.3d at 1089. At the summary judgment stage, this means "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "In conducting a pretext analysis,

8

the court does not 'engage in second-guessing of an employer's business decisions.'" *Roberson-King v. State of La. Workforce Comm'n*, --- F.3d ---, 2018 WL 4402110, at *2 (5th Cir. 2018) (quoting *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)). An employee's subjective belief that he has suffered discrimination is not sufficient to establish pretext. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) (a "subjective belief of discrimination . . . cannot be the basis of judicial relief").

    **2.    Kitchen Cannot Show That He Was Disabled Within the Meaning of the ADA**

BASF first argues that Kitchen cannot establish a prima facie case of disability discrimination because he fails to demonstrate that he is disabled within the meaning of the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Failure to establish an actual or perceived disability is fatal to a plaintiff's case, and no further consideration is required." *Willis v. Noble Envtl. Power, LLC*, 143 F. Supp. 3d 475, 479 (N.D. Tex. 2015) (citation, internal quotation marks, and brackets omitted). It is Kitchen's burden to show that he is disabled, has a record of having a disability, or is regarded as disabled. *See EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

"[T]here is no *per se* rule that categorizes recovering alcoholics . . . as disabled." *Oxford House, Inc. v. City of Baton Rouge*, 932 F. Supp. 2d 683, 688 (M.D. La. 2013).

Indeed, "mere status as an alcoholic or substance abuser does not necessarily imply [the requisite] 'limitation' [for a disability determination]." *Oxford House, Inc.*, 932 F. Supp. at 689 (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002)). Instead, a case-by-case evaluation is necessary "to determine whether a particular plaintiff, who is a recovering alcoholic, qualifies as disabled, because of his addiction." *Radick v. Union Pac. Corp.*, No. 4:14-CV-02075; 2016 WL 639126, at *5 (S.D. Tex. Jan. 25, 2016). To prove that he is disabled, Kitchen "must provide evidence that his alcoholism substantially limits his ability to perform a major life activity, as compared to most people in the general population." *Id.* (citation omitted). Under the ADA, major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Although Kitchen asserts that he is a recovering alcoholic, there are no allegations—nor evidence—that his alcoholism impaired a major life activity at the time of his termination in October 2015. In fact, Kitchen's own pleadings and testimony actually contradict any claim that his major life activities were substantially impaired at the time of his termination. By way of example, Kitchen's live pleading alleges that he was sober for approximately two years prior to his termination. Moreover, Kitchen testified in deposition that, far from being an incoherent and floundering drunk, he drank only "[v]ery minor amounts" of alcohol in the year preceding his termination. Dkt. 77-4 at 32. There is absolutely no evidence to be found anywhere in the record that Kitchen's alcoholism

10

impacted his ability care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breath, learn, read, concentrate, think, communicate, or work. *See* 42 U.S.C. § 12102(2). Indeed, the uncontroverted evidence is that Kitchen had no issues in performing the major life activity of working for a living; he readily acknowledges that he worked for BASF for nine years prior to his termination. Years ago, the Fifth Circuit provided guidance that applies with equal force to this case today: "[T]he evidence [is] insufficient to support a finding that [the employer] regarded [the employee] as anything other than what he actually was: an alcoholic whose alcoholism did not substantially impair any major life activity, including the major life activity of working." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 322 (5th Cir. 1997).

In an effort to avoid summary judgment, Kitchen argues that he was "regarded by [BASF] as having a disability" because BASF knew he was recovering alcoholic, allowed him to participate in an Employee Assistance Program, and required him to submit to alcohol tests. Dkt. 80 at 21. If the Court accepts Kitchen's theory, "every employee ever subjected to alcohol testing or placed on leave for drinking at work necessarily would be disabled under the statute." Dkt. 79 at 4. That is an absurd result that finds no support in the case law. In truth, it is black-letter law that Kitchen's "burden under the ADA is not satisfied merely by showing that [BASF] regarded him as a[n alcoholic]: the fact that a person is perceived to be a[n alcoholic] does not necessarily mean that person is perceived to be disabled under the ADA." *Zenor*, 176 F.3d at 859. *See also Deas v. River West, L.P.*, 152 F.3d 471, 479 (rejecting argument that employer regarded plaintiff as disabled merely because employer regarded plaintiff as suffering from seizure disorder); *Bridges v. City of*

11

*Bossier*, 92 F.3d 329, 336 n.11 (5th Cir. 1996) (rejecting argument that employer regarded plaintiff as disabled merely because employer regarded plaintiff as suffering from hemophilia). "Thus, even a plaintiff who suffers from a condition such as alcoholism or drug addiction—or is perceived as suffering from such a condition—must demonstrate that the condition substantially limits, or is perceived by his employer as substantially limiting, his ability to perform a major life function." *Zenor*, 176 F.3d at 860. The fact that Kitchen might have been previously hospitalized for alcoholism does not necessarily give rise to a disability determination. *See Burch*, 119 F.3d at 316; *Zenor*, 176 F.3d at 860. Nor does the fact that BASF caught Kitchen drinking on the job and subsequently required him to submit to alcohol testing. As noted above, Kitchen has failed to identify a major life activity that is substantially limited by his alleged alcoholism. *See Garza v. City of Donna*, No. 7:16-CV-00558, 2017 WL 2861456, at *8 (S.D. Tex. July 5, 2017) ("the relevant legal question is whether [plaintiff's] alleged substance addiction substantially limited at least one of his major life activities"). Moreover, Kitchen's BASF supervisor, the same individual who made the decision to terminate his employment, testified that he did not regard Kitchen as disabled. *See* Dkt. 77-7 at 13. As a whole, there is no issue of material fact from which a reasonable jury could find that Kitchen has presented a prima facie case of disability. Because Kitchen is not disabled within the meaning of the ADA, the Court recommends summary judgment be granted on the ADA claim.

### 3. Kitchen Cannot Establish That BASF's Legitimate Nondiscriminatory Reason For His Termination Was A Mere Pretext For Discrimination

Even if Kitchen could, hypothetically, establish a prima facie case of retaliation, the burden would then shift to BASF to produce its legitimate, non-retaliatory reason for terminating Kitchen's employment. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 490 (5th Cir. 2014). In the present case, BASF has articulated a legitimate nondiscriminatory reason for firing Kitchen: its good faith belief based on alcohol test results that Kitchen violated BASF's policies and his Final Warning and Return to Work Agreement. *See Clark v. Boyd Tunica, Inc.*, 665 F. App'x 367, 370–71 (5th Cir. 2016) (holding that a positive alcohol test constitutes a legitimate, nondiscriminatory reason for termination); *Hunter v. Union Pac. R. Co.*, No. H-11-3408, 2013 WL 3229910, at *7 (S.D. Tex. June 25, 2013) (same).

To survive summary judgment under the *McDonnell Douglas* framework once BASF provides a legitimate nondiscriminatory reason for the termination, Kitchen must "offer sufficient evidence to create a genuine issue of material fact . . . that [BASF's] reason is not true, but is instead a pretext for discrimination." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Kitchen falls woefully short of discharging his burden to demonstrate pretext. He simply cannot demonstrate pretext for retaliation under the "but-for" pretext standard applicable to claims under the ADA. As the Fifth Circuit has noted: "At the end of the day, the pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' to allow the jury to

find that discrimination was the but-for cause of the termination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

Although Kitchen vociferously complains that the alcohol testing process BASF implemented was replete with problems (both in the administration of the test and the interpretation and extrapolation of the test results), such problems do not show discriminatory intent as a matter of law. *See, e.g., Clark,* 665 F. App'x at 371–72 (holding that, because the employer reasonably believed test result showing employee had consumed alcohol, employee could not establish pretext); *Graham v. Long Island R.R.*, 230 F.3d 34, 44 (2d Cir. 2000) ("Reasonable reliance by an employer on a laboratory test, even where misplaced, does not provide any basis for a jury to find pretext."); *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) ("The inquiry is not whether [the employee] actually committed the alleged infraction, but whether [the employer] believed that he had and based its decision to discharge him on that belief."); *Hall v. Smurfit-Stone Container Enters., Inc.*, No. 3:07-CV-0501-G, 2008 WL 3823252, at *4 (N.D. Tex. Aug. 14, 2008) (holding that an employee's failed drug tests were a legitimate, nondiscriminatory reason for job termination regardless of whether the positive result was caused by prescription drugs). For the purposes of considering the summary judgment motions in this case, the Court can simply assume that there were, indeed, problems with the underlying reliability of the test results. As a legal matter, it is simply immaterial whether the test results were accurate or not.

> In pretext cases, it is not enough that the company was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true. A factual dispute over the employee's innocence of the allegations against him is not enough to survive summary judgment; the plaintiff must put forward evidence sufficient to create a factual dispute as to whether or not the company subjectively believed that the allegations were true. The plaintiff has the ultimate burden of showing a genuine material factual dispute over whether the defendant discriminated against him on the basis of the plaintiff's membership in the protected class.

*Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016) (citations omitted).

In this case, Kitchen has completely failed to meet his burden to establish pretext. He has presented no summary judgment evidence that Damron's decision to terminate him—regardless of whether that decision was correct—was motivated by any unlawful discriminatory animus. Kitchen's failure to present such evidence is fatal to his claim. *See Clark*, 665 F. App'x at 371–372 ("The focus of the pretext inquiry is not whether the alcohol in Clark's sample was, in fact, attributable to her improper consumption of alcohol, but whether Sam's Town reasonably believed it was and acted on that basis."); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165–66 (5th Cir. 1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief."). There is no evidence that Damron ever expressed any animus toward disabled persons or alcoholics. Nor is there any evidence that any non-disabled employee was every allowed to remain employed under nearly identical circumstances. It is telling that the only admissible summary judgment

15

evidence establishes that Damron terminated Kitchen because he genuinely believed that Kitchen showed up for work under the influence of alcohol in violation of company policy and his pledge not to do so. Damron's declaration submitted in support of BASF's Motion for Summary Judgment states as follows:

> When I learned that Plaintiff Kitchen's alcohol test results were 0.014 at 10:40 a.m. and 0.010 approximately 15 minutes later, I was concerned. Assuming that Plaintiff Kitchen had not been drinking at work, I believed his alcohol level must have been higher when he had arrived at work at 7:30 a.m. several hours earlier. This, combined with his arriving late to work, his prior history of drinking on the job, and his failure to provide any reasonable excuse for why there was any level of alcohol in his blood, convinced me that Plaintiff Kitchen had likely been drinking before his shift and had likely arrived to work that morning under the influence of alcohol.
> . . . .
> . . . Based on these concerns, BASF concluded that Plaintiff Kitchen had violated his final warning and return-to-work agreement and terminated Plaintiff Kitchen's employment effective October 2, 2015.

Dkt. 77-5 at 2–3.[3] Because Kitchen cannot demonstrate that BASF's legitimate reason for his termination was a mere pretext, BASF is entitled to judgment as a matter of law.

---

[3] Citing a 2012 BASF policy, Kitchen argues that a blood alcohol test must register at least 0.04 to constitute a positive test. Because Kitchen did not blow a 0.04, Kitchen claims that it was improper for BASF to terminate him based on 0.014 and 0.010 test results. This argument is misplaced. For starters, the uncontroverted summary judgment evidence establishes that a June 2013 BASF policy replaced the 2012 policy to which Kitchen relies, and the 2013 policy did not mandate any positive test threshold. Moreover, the Final Warning and Return to Work also did not contain any test threshold. It simply provided that "testing positive, may lead to discipline up to, and including, termination of employment." Dkt. 77-3 at 50.

**B.     ADEA**

In addition to claiming that BASF discriminated against him based on a disability, Kitchen asserts that BASF discriminated against him because of his age.  The federal statute that governs age discrimination claims is the ADEA, which expressly prohibits employers from discriminating against employees who are at least 40 years old on the basis of age.  *See* 29 U.S.C. § 623(a)(1).

Absent direct evidence of age discrimination, a plaintiff seeking to establish prima facie ADEA claim must show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Kilgore v. Brookeland Indep. Sch. Dist.*, 538 F. App'x 473, 476 (5th Cir. 2013) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).  If a plaintiff sets forth a prima facie case of age discrimination, his employer must articulate a legitimate, nondiscriminatory reason for the employee's discharge. *See id.* at 476.  "If [defendant] carries its burden, [plaintiff] must prove that [defendant's] 'reasons are pretexts for unlawful discrimination either by showing that a discriminatory reason more likely motivated' [defendant] or by showing that [defendant's] 'reason is unworthy of credence.'" *Id.* (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1505 (5th Cir. 1988)).  The plaintiff "retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision." *Id.* (quoting *Bienkowski*, 851 F.2d at 1505).  *See also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (to ultimately succeed on a claim of age discrimination, "[a]

17

plaintiff must prove by a preponderance of evidence . . . that age was the 'but-for' cause of the challenged employer decision").

Kitchen presents absolutely no evidence whatsoever to establish a prima facie case under the ADEA that "he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Kilgore*, 538 F. App'x at 476 (citation omitted). Even assuming Kitchen could establish a prima facie case under the ADEA, he has failed to show that BASF's reasons for his termination were mere pretext for age discrimination. The burden rests with Kitchen and he comes nowhere close to meeting that burden.

Kitchen's ADEA claim is based entirely on his subjective belief that he was terminated, in part, because of his age. As a legal matter, Kitchen's subjective belief that age played a role in his termination is insufficient to establish a prima facie case of discrimination under the ADEA. *See Vasquez v. Nueces Cnty.*, 551 F. App'x 91, 93–94 (5th Cir. 2013) ("[W]e have held that the subjective belief of a plaintiff is not sufficient to establish a *prima facie* case of discrimination under . . . the ADEA"). Kitchen provides zero evidence that he was treated differently than any other BASF employees under similar circumstances.

Although Kitchen dismisses the fact that Damron, the individual who fired him, is also in his 50s and thus a member of the same protected class as Kitchen, the law is clear: "When decision makers are in the same protected class as the plaintiff, there is a presumption that unlawful discrimination is not a factor in the discharge." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 744 (S.D. Tex. 2014) (citation omitted). *See also Rhodes v.*

18

*Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) ("[W]hen the *decision makers* are all of the same protected class as the discharged employee, it is similarly less likely that unlawful discrimination was the reason for the discharge.").

In short, Kitchen's ADEA claim falls flat. Summary judgment is appropriate in favor of BASF on the ADEA cause of action.

### C. Section 1981

Kitchen's Original Complaint also cites Section 1981, which "provides a cause of action for public or private discrimination based on race or alienage." *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986) (citations omitted). *See also David v. Signal Int'l, LLC*, No. CIV.A. 08-1220, 2015 WL 65290, at *2 (E.D. La. Jan. 5, 2015) ("Section 1981 refers to discrimination in the making and enforcement of contracts and is designed to include a federal remedy against discrimination in employment on the basis of race or alienage.") (citations, internal quotation marks, and brackets omitted). Since Kitchen does not even identify his race or alienage, BASF argues Kitchen's Section 1981 claim must fail as matter of law. In response, Kitchen notes that the reference to Section 1981 in the Original Complaint was a typographical error, and acknowledges that he has no Section 1981 claim. Out of an abundance of caution, the Court recommends BASF's motion for summary judgment on the Section 1981 claim be granted.

### CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Defendant's Motion for Summary Judgment (Dkt. 77) be GRANTED, Plaintiff's Second Motion for Summary

Judgment (Dkt. 71) be DENIED, and BASF's Motion for Judgment on the Pleadings (Dkt. 31) be DENIED AS MOOT.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 16th day of October, 2018.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE